**THIRD DIVISION**
**DOYLE, P. J.,**
**MARKLE and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**December 16, 2025**

# In the Court of Appeals of Georgia

A25A1902. SIGNAL MACHINE COMPANY, INC. et al. v. FRIENDLY-ABLE et al.

A25A1924. CLUB CAR, LLC v. FRIENDLY-ABLE et al.

PADGETT, Judge.

These companion appeals arise out of a lawsuit filed by Chrystal Friendly-Able against Club Car, LLC ("Club Car"), Signal Machine Company, Inc., and Signal Solutions of Tennessee, LLC (collectively, the "Signal Appellants") for the wrongful death of Alyssa Drinkard, who was killed in an industrial accident involving an allegedly defective and unreasonably dangerous conveyor belt system while working at Club Car's manufacturing plant in Evans, Georgia. Club Car and the Signal Appellants contend that the trial court erred in denying their motions to transfer venue pursuant to the forum non conveniens statute, OCGA § 9-10-31.1. For the

reasons that follow, we vacate the judgment of the trial court and remand the case for proceedings consistent with this opinion.

The relevant facts for purposes of the motion to transfer venue are not in dispute. According to Friendly-Able's complaint, Drinkard was working as a contract worker at Club Car's manufacturing plant in Evans, Georgia, on the night of March 8, 2024, when she became entangled in the conveyor belt system. A witness activated an emergency stop button, attempting to halt the conveyor belt system, but that emergency mechanism failed and maintenance personnel were called to manually shut down the conveyor belt system. Emergency responders, including deputies, firefighters, and EMTs, had to cut through the system's metal frame in order to extricate Drinkard. Drinkard was transported to Doctors' Hospital in Augusta, where she was later pronounced dead.

At the time of her death, Drinkard was a resident of Columbia County, and Club Car's manufacturing plant where Drinkard sustained her fatal injuries, as well as its principal place of business, was in Columbia County. Friendly-Able, Drinkard's next-of-kin and administrator of her estate,[1] also is a resident of Columbia County.

---

[1] At the time the complaint was filed, Drinkard's estate was pending in the Probate Court of Columbia County.

Friendly-Able brought suit against Club Car, the Signal Appellants,[2] and another defendant, Tennessee Engineering Services, Inc. ("TES")[3] in the State Court of Gwinnett County, where Club Car's registered agent for service of process, CT Corporation System, was located, alleging that Drinkard's death was "caused by the unsafe working conditions, malfunctioning safety equipment, and lack of adequate training and protocols maintained" by Club Car, the Signal Appellants, and TES. In her complaint, she asserts claims for negligence against Club Car based on its alleged failure "to inspect, maintain, and remedy dangerous and hazardous conditions on [its] premises, particularly with respect to the [c]onveyor [b]elt [s]ystem," and its alleged failure to properly safeguard the conveyor belt system and to properly train, supervise,

---

[2] The Signal Appellants are considered residents of Catoosa County, Georgia.

[3] TES was a Tennessee corporation with its principal place of business in Chattanooga, Tennessee, that specially designed and built the conveyor belt system as a custom order for Club Car's Columbia County manufacturing facility. In 2023, the Signal Appellants purchased certain assets and assumed certain operating liabilities of TES, and TES thereafter was dissolved on or about May 1, 2024. Friendly-Able did not initially effect service on TES, but the record contains affidavits attesting to service by statutory overnight delivery 20 days after the trial court's order denying the motions to transfer venue and 17 days before this Court granted applications for interlocutory appeal. The record does not include any answer or other responsive pleading by TES. As a result, we will not consider TES in evaluating whether the trial court erred in denying the motions to transfer.

and warn workers such as Drinkard "about the hidden dangers" of the system. She also asserts claims for negligence and strict product liability against the Signal Appellants and TES, alleging the conveyor belt system was defectively designed, manufactured, installed, and maintained, and that the Signal Appellants and TES failed to warn of the risks and dangers inherent within the design, manufacture, placement, use, and operation of the system at Club Car's manufacturing plant.[4]

Club Car and the Signal Appellants answered and moved to transfer the case to the Superior Court of Columbia County based on the doctrine of forum non conveniens, as codified at OCGA § 9-10-31.1(a). They argued in their motions to transfer that because the only connection the case had to Gwinnett County was the presence of Club Car's registered agent for service of process, venue was more proper in Columbia County, where the premises and product involved in the incident, witnesses, and other evidence were located, and where Friendly-Able and Drinkard resided.

---

[4] Friendly-Able also seeks punitive damages under OCGA § 51-12-5.1 and attorney fees under OCGA § 13-6-11 against all defendants.

The trial court denied the motions to transfer venue and issued a certificate of immediate review. This Court granted Club Car's and the Signal Appellants' applications for interlocutory appeals. These appeals followed.

When considering a motion to transfer based on forum non conveniens, a trial court must apply the standard set out in OCGA § 9-10-31.1, which provides:

> If a court of this state, on written motion of a party, finds that in the interest of justice and for the convenience of the parties and witnesses a claim or action would be more properly heard in a forum . . . in a different county of proper venue within this state, the court shall decline to adjudicate the matter under the doctrine of forum non conveniens. . . . [and] the venue shall be transferred to the appropriate county. In determining whether to grant a motion . . . to transfer venue under the doctrine of forum non conveniens, the court shall give consideration to the following factors:
>
> (1) Relative ease of access to sources of proof;
>
> (2) Availability and cost of compulsory process for attendance of unwilling witnesses;
>
> (3) Possibility of viewing of the premises, if viewing would be appropriate to the action;
>
> (4) Unnecessary expense or trouble to the defendant not necessary

to the plaintiff's own right to pursue his or her remedy;

(5) Administrative difficulties for the forum courts;

(6) Existence of local interests in deciding the case locally; and

(7) The traditional deference given to a plaintiff's choice of forum.

OCGA § 9-10-31.1(a). The burden is on the movant to show that the factors set out in OCGA § 9-10-31.1(a) support transfer, and application of the statutory standard to the unique circumstances of a particular case is committed to the sound discretion of the trial court. *McInerney v. McInerney*, 313 Ga. 462, 469(2)(c) (870 SE2d 721) (2022). However, "the discretion of the trial court is not without some limits," and our task is to determine "whether the decision of the trial court was a reasoned and reasonable one in the light of the standard set out, and factors enumerated, in OCGA § 9-10-31.1(a)." *Wang v. Liu*, 292 Ga. 568, 570–71(1) (740 SE2d 136) (2013). For, as our Supreme Court has cautioned, "a *proper* venue is not necessarily the most *convenient* venue," and "the issue is not whether venue was proper where the action was filed, but whether there is sufficient evidence to support a conclusion that 'in the interest of justice and for the convenience of the parties and witnesses a claim or action would

be more properly heard in a [different] forum[.]'" *McInerney*, 313 Ga. at 469(2)(c) (citing OCGA § 9-10-31.1(a)). And where the trial court's exercise of discretion is "infected by a significant legal error," we will find an abuse of discretion. *McInerney*, 313 Ga. at 470(2)(c) (citation and punctuation omitted).

Bearing in mind the overarching standard of "in the interest of justice and for the convenience of the parties and witnesses," we examine the trial court's analysis of the comparative propriety of Gwinnett County and Columbia County, in light of the seven factors set out in OCGA § 9-10-31.1(a). See *Federal Ins .Co. v. Chicago Ins. Co.*, 281 Ga. App. 152, 154–55 (635 SE2d 411) (2006) (requiring that the trial court compare the two venues, guided by the seven statutory factors, to determine which, in the interest of justice and for the convenience of the parties and witnesses, is "*more proper*" (emphasis in original)), overruled in part on other grounds by *Wang*, 292 Ga. at 571(1).

1. *Relative Ease of Access to Sources of Proof*

Here, the trial court did not weigh the relative ease of access to sources of proof as between Gwinnett County and Columbia County. Rather, the trial court asserted that the "parties will have relatively easy access to sources of proof in Gwinnett

7

County" because discovery can be conducted electronically, and the record did not establish that Club Car and the Signal Appellants "will be unable to access sources of proof with relative ease" with venue in Gwinnett County, "even if some witnesses or evidence is located closer to or in Columbia County."

The trial court's assertions reflect a legally incorrect understanding and analysis of the factor set forth in OCGA § 9-10-31.1(a)(1). The inquiry this factor requires is not whether it is "relatively easy" for the parties to access evidence in one forum or whether the record fails to show that the parties would be incapable of accessing proof in that forum. The correct evaluation the trial court must undertake is to compare the relative ease of access, as between the two venues, to sources of proof, not just during the discovery phase of the litigation, but for trial as well. And in making that evaluation, the trial court should include "[c]onsiderations of witness convenience and efficient access to other evidence." See *McInerney*, 313 Ga. at 470(2)(c) (explaining that witness convenience and efficient access to evidence are properly included within the first statutory factor). The record demonstrates that, in addition to party witnesses Friendly-Able and Club Car, nonparty witnesses, including Club Car personnel who are most familiar with and performed routine maintenance and

8

repairs to, the allegedly defective conveyor belt system, are located in Columbia County. Similarly, the conveyor belt system itself, documents related to its operation, maintenance, and inspection, and the premises that Friendly-Able alleges were negligently maintained are in Columbia County. The record likewise indicates that additional nonparty witnesses, including co-workers who trained and supervised Drinkard, those who witnessed the accident, and first responders and medical personnel are either in or near Columbia County. Nowhere does the record demonstrate that any witnesses or other sources of proof are located in Gwinnett County, or even closer to Gwinnett County than Columbia County.

Thus, the trial court erred in evaluating this first statutory factor merely as whether the parties would be capable of conducting discovery with venue in Gwinnett County, in failing to evaluate the comparative or relative ease and efficiency of access to witnesses, including nonparty witnesses, and other sources of proof as between the existing and proposed venues, and in omitting any consideration of the comparative convenience to witnesses in attending trial between the two venues.[5] See OCGA § 9-

_____

[5] Witness (and party) convenience is necessarily a function of proximity, with adjacent venues or venues that are near to each other producing less inconvenience than those that are greater distances apart. See, e.g., *Gowdy v. Schley*, 317 Ga. App. 693, 696(2) and n.13 (732 SE2d 774) (2012) (noting the trial court's consideration of

10-31.1(a)(1); *McInerney*, 313 Ga. at 470(2)(c). Indeed, in contravention of OCGA § 9-10-31.1(a), the trial court's order is devoid of any reference to, let alone consideration of, the convenience of witnesses. Yet where, as here, the facts and allegations arise out of events occurring in the proposed transferee venue and "most of the likely witnesses" are located within that proposed venue, our Supreme Court has held that the relative ease of access to sources of proof favor that proposed venue over the existing venue. See *Hawthorn Suites Golf Resorts v. Feneck*, 282 Ga. 554, 556–57(3) (651 SE2d 664) (2007).

2. *Availability and Cost of Compulsory Process for Unwilling Witnesses*

With respect to the second factor, the trial court found that the record "fail[ed] to show that there are unwilling witnesses" and "that the cost of . . . compulsory process is so much greater in Gwinnett County than in Columbia County that transfer is proper."

---

the close proximity of Muscogee County, Georgia and Russell County, Alabama in connection with considering the comparative inconvenience to the parties and witnesses in denying the forum non conveniens motion, and suggesting that a cause of action arising in a forum farther away with witnesses located in that distant forum may yield a different outcome). Here, the parties do not dispute that the State Court of Gwinnett County is approximately 130 miles from Columbia County.

While the trial court was correct in noting that the record at this point in time does not show that there are unwilling witnesses,[6] it erred in its analysis that the cost of compulsory process in one venue over another must be of an unspecified greater magnitude in order to, by itself, support transfer. Rather, the correct legal analysis requires that the trial court consider the demonstrated (or, if more appropriate at the given stage of the litigation, the expected) cost of compulsory process associated with each venue, and where cost is greater in one venue over the other and hence favors transfer to the latter venue, that factor joins with the remaining six statutory factors in determining whether, "in the interest of justice and for the convenience of the parties and witnesses," the case is "more properly" heard in the proposed transferee venue. OCGA § 9-10-31.1(a).[7]

---

[6] We recognize that moving to transfer at the outset of litigation may conserve judicial resources, but does not necessarily lend itself to precisely identifying witnesses who will not agree to appear voluntarily at a trial many months, if not years, in the future.

[7] Even at this early stage of litigation, the trial court can evaluate, as a matter of law, the likely cost associated with compulsory process for witness attendance at trial in each venue, in the event such process is needed. See OCGA § 24-13-25 (setting out witness fees as $25 per diem, and when a witness resides outside the county where the testimony is to be given, an additional 45¢ per mile for travel between the witness's residence and the place of testimony). As noted above, the record here does establish that there are party and nonparty likely witnesses who are located in Columbia

### 3. *Possibility of Viewing the Premises, if Appropriate*

OCGA § 9-10-31.1(a)(3) requires the trial court consider the "[p]ossibility of viewing the premises, if viewing would be appropriate to the action." Once again, the trial court erred in its legal interpretation of this factor. While the trial court conceded that "it would be more convenient" to view the premises (which premises would include the conveyor belt system, risk-mitigation features of the system or the premises, and warnings, or lack thereof) if the case was transferred to Columbia County, it nonetheless disregarded that finding on the basis that "the record fails to show that viewing the premises is likely." "Likely" viewing the premises is not the standard called for by the third statutory factor. By the plain language of the statute, the standard requires an inquiry into the comparative ability, from each venue, to achieve a viewing of the premises, if a viewing would be appropriate given the nature of the action and claims asserted (for instance, a premises liability and industrial product liability action versus a divorce or a contract action). The statute contemplates the possibility and achievability of viewing the premises; it does not require a showing, particularly at the outset of the litigation, that a jury view is

County, but the record does not reveal any likely witnesses located in Gwinnett County.

12

"likely." See OCGA § 9-10-31.1(a)(3). See also *Hawthorn Suites*, 282 Ga. at 556(3) (recounting trial court's appropriate consideration that "to the extent that any premises would need to be viewed" in action arising out of agreement for property management services, that viewing would occur in the alternate forum, thereby supporting dismissal based on forum non conveniens). The trial court erred both in its legal interpretation of this statutory factor and in disregarding its own finding that this factor favored Columbia County as the more convenient forum for a viewing of the premises.

4. *Unnecessary Expense or Trouble to Defendant Not Necessary to Plaintiff's Right to Pursue Remedy*

With respect to the fourth factor, the trial court again found that litigating in Gwinnett County would have Club Car and the Signal Appellants "incur additional costs" for witnesses to appear at trial,[8] but then erred in discounting that finding, suggesting that "witnesses often appear at trial via video deposition," and that those additional costs were "not so expensive or troublesome" to transfer the case from the

---

[8] The trial court's order was silent on the additional cost to Club Car for itself, as a party, attending trial in Gwinnett County, rather than in Columbia County, near its and Friendly-Able's home.

plaintiff's choice of venue. It concluded that the import and magnitude of those greater costs fell by the wayside where Friendly-Able chose to file the case in Gwinnett County.

The trial court did not correctly apply this fourth factor in light of the larger statutory standard. Here, the trial court acknowledged that venue in Gwinnett County would cause Club Car and the Signal Appellants to incur additional costs they otherwise would not if the case was transferred to Columbia County, but incorrectly failed to: (a) recognize and give weight to our Civil Practice Act's directive that testimony at trial be taken orally in open court, OCGA § 9-11-43(a); (b) continue to credit its own finding of additional cost balanced against, collectively, the other six factors; (c) examine the "trouble" or inconvenience that Club Car and the Signal Appellants would encounter in litigating and attending trial in a forum distant from both Club Car and Friendly-Able; or (d) determine whether its finding of additional cost or its required, but not analyzed, inquiry into the trouble Club Car and the Signal Appellants would shoulder by having the case heard in Gwinnett County was unnecessary to Friendly-Able's right to pursue the remedy she sought. On the latter issue, it is important to note that in the particular circumstances presented here, there

14

is no difference in the substantive law that would be applied in the State Court of Gwinnett County and the Superior Court of Columbia County; the only difference between the venues as contemplated by this fourth statutory factor is that the courthouse would be located in, and the jurors would be from, Friendly-Able's home county of Columbia County as opposed to the county of one defendant's registered agent. As a matter of law, Friendly-Able's right to pursue her remedy would not be adversely affected and would remain fully intact if the case were to be heard in Columbia County.

5. *Administrative Difficulties for the Forum Courts*

In addressing the fifth factor, directing that the administrative difficulties of the *plural* "forum courts" be considered, the trial court again erred by simply concluding that "[t]he record fails to show that Gwinnett County will have difficulty administering this action." The inquiry presented by this factor is not whether the State Court of Gwinnett County would or would not encounter administrative difficulties in hearing the case. The inquiry involves comparing the administrative difficulties for the State Court of Gwinnett County *and* the Superior Court of Columbia County, and determining whether those potential difficulties are greater in

one of the two venues. See *Chicago Ins.*, 281 Ga. App. at 154 n.5. This comparison typically would include consideration of each venue's relative case load or calendar congestion, whether one venue is likely to require more court involvement or court expense than the other on matters related to its location (such as issuing and enforcing compulsory process, or accomplishing a jury view), and each venue's familiarity with the governing law.

6. *Existence of Local Interests in Deciding the Case Locally*

With respect to the sixth factor, the trial court found that "[b]ecause the incident occurred in Columbia County, that county has some interest in having the case decided" there, but that Gwinnett County also had "an interest" in deciding the case because Club Car chose a registered agent located in Gwinnett County.

The record belies the trial court's conclusory assertion that Gwinnett County and Columbia County have arguably equal "local interests in deciding the case locally." Here, the record demonstrates not simply that the incident occurred in Columbia County, but that Drinkard and Friendly-Able were residents of Columbia County, that Club Car has its principal place of business in Columbia County, that the premises and product that allegedly give rise to liability are located in Columbia

16

County, and that all fact witnesses — including first responders who serve the public within their community and who would have differing amounts of time away from their service depending on where the case is heard — are in or near Columbia County. Conversely, the only "local interest" Gwinnett County arguably can be said to have in deciding the case locally is that one of three served defendants had a corporate registered agent located in Gwinnett County. Casting that as a local interest sufficient to outweigh and overcome the countervailing local interest held by Columbia County on the particular facts of this case is inconsistent with our doctrine of forum non conveniens. See *AT&T v. Sigala*, 274 Ga. 137, 138 (549 SE2d 373) (2001) ("[t]here is a local interest in having localized *controversies* decided at home (quoting *Gulf Oil Corp. v. Gilbert*, 330 US 501, 508 (67 SCt 839, 91 LEd 1055) (1947) (punctuation omitted; emphasis added)), superseded by statute as stated in *LaFontaine v. Signature Research*, 305 Ga. 107, 109 n.3 (823 SE2d 791) (2019); *Hawkins v. Blair*, 334 Ga. App. 898, 904(3)(f) (780 SE2d 515) (2015) (finding no abuse of discretion where trial court determined that metro Atlanta forum had "no local interests" favoring it, notwithstanding allegation that defendant illegally transferred money from bank

located in Atlanta via bank employees, where both parties were residents of alternate forum and alleged injuries occurred in that alternate forum).

Furthermore, full consideration of the sixth factor should include an evaluation of the comparative interest in, or burden of, requiring each of the venues to bear the expense of funding a jury, particularly where the events giving rise to the controversy or litigation occurred in one, but not the other, venue. *Sigala*, 274 Ga. at 138 ("Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." (citation and punctuation omitted)).

7. *Traditional Deference Given to a Plaintiff's Choice of Forum*

In its consideration of the seventh and final factor, the trial court stated simply that Friendly-Able's decision to file the action in Gwinnett County was entitled to "some deference," yet, as discussed supra, when considering other statutory factors, the trial court repeatedly invoked her choice of forum as the basis for discounting or diminishing factual analyses of other factors that favored Columbia County as the more proper forum. In doing so, the trial court committed legal error.

According to the language of the statute, the seventh factor requires a trial court to consider the "traditional deference" given to a plaintiff's choice of forum. OCGA

§ 9-10-31.1(a)(7). Although the statute has existed for only 20 years[9] and does not define "traditional," we are cognizant of previous decisions of this Court and our Supreme Court declining to accede to the principle that "traditional deference" conveys greater weight to the plaintiff's choice of forum than that afforded the six preceding statutory factors or that it can act to diminish findings made in consideration of other factors. See *Hawthorn Suites*, 282 Ga. at 556–57(3) (holding trial court did not abuse its discretion in determining that plaintiff's "decision to litigate the case in Georgia could not override the clear implication of the preceding factors" indicating that the case was more properly heard in Louisiana); *Woodard Events v. Coffee House Indus.*, 341 Ga. App. 526, 529 (e) (801 SE2d 322) (2017) (rejecting argument that trial court abused its discretion by not placing greater weight on the sixth and seventh factors of local interests and plaintiff's choice of forum); *Collier v. Wehmeier*, 313 Ga. App. 421, 424 (2) (721 SE2d 919) (2011) (rejecting argument that "traditional deference to the plaintiff's choice of forum" should be given greater weight than other factors or that "in the absence of a clear showing of inconvenience to defendants," deference to the plaintiff's choice of forum "trumps the other

---

[9] Ga. L. 2005, Act 1, § 2 (effective Feb. 16, 2005).

factors"). If our legislature had intended for this last of the seven factors to carry more weight than the previous six or for it to serve as a countervailing analytical force within each of those other six factors, it could have said so, but it did not.

Particularly in the peculiar circumstances presented here, where a plaintiff chooses a forum that is both distant from plaintiff's home county and which forum's *only* connection to the case is the presence of one defendant's corporate registered agent, and where the plaintiff, that defendant, the events giving rise to the action, the class of witnesses of record, and other evidence, including the allegedly defective industrial product and the premises which allegedly give rise to liability, are all located in or much nearer to the proposed forum, we hold that the factor of plaintiff's choice of such a distant forum as presented here, in and of itself, is insufficient to warrant retention of venue.[10] See *Hawkins*, 334 Ga. App. at 904(3)(g) ("in light of the totality of the circumstances," plaintiff's choice of forum was not enough to retain venue in Fulton County).

---

[10] This is even more so where, as here, the presence of one defendant's corporate registered agent is the sole, non-substantive hook that establishes venue as to alleged joint tortfeasors, the Signal Appellants, who have no connection — corporate, liability-based, or otherwise — to the venue.

We conclude by reiterating that the full inquiry into the standard set out in our forum non conveniens statute is not whether the case is capable of being heard in a proper forum "in the interest[ ] of justice and the convenience of [only] the parties," as the trial court held, but whether it is "*more* properly" heard in a forum different than that chosen by the plaintiff, "in the interest of justice and the convenience of the parties *and witnesses*," as guided by a comparison of the fora according to the factors set forth in OCGA § 9-10-31.1(a). And to that latter endeavor, we add that where a trial court applies the statutory factors that guide evaluation of that overarching standard in a manner that permits the plaintiff's choice of forum to discount and supersede undisputed facts and trial court findings that, on balance, favor transfer or dismissal, it effectively renders our forum non conveniens statute meaningless and thereby commits an abuse of discretion.

We therefore vacate the judgment of the trial court and remand the cases for the trial court to reconsider, pursuant to the proper framework of OCGA § 9-10-31.1(a) and in accordance with this opinion, whether, "in the interest of justice and for the convenience of the parties and witnesses" and as guided by comparative consideration

of the statute's seven enumerated factors, the case would be "more properly" heard in the Superior Court of Columbia County.

*Judgments vacated and cases remanded with direction. Doyle, P. J., and Markle, J., concur.*